UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KAREN DECHABERT,

                                              **COMPLAINT**

                  Plaintiff,

    -against-


METROPOLITAN TRANSPORTATION AUTHORITY;
KENNETH NEAL, in his official and individual
capacities as an aider and abettor; NAEEM DIN,
in his official and individual capacities as an
aider and abettor; GWENDOLYN HARLESTON,
in her official and individual capacities as an
aider and abettor,

                  Defendants.
------------------------------------------------------------------------X

      Plaintiff KAREN DECHABERT, by and through her attorneys, THE LAW OFFICES OF SHERI HATTON, PLLC, alleges as follows:

    I.      INTRODUCTION

    1.      This action is brought pursuant to Title VII and the Americans with Disabilities Act to vindicate Plaintiff Karen deChabert's civil rights. Plaintiff contends that Defendants impermissibly altered the terms, conditions and privileges of her employment by subjecting her to retaliatory disciplinary processes after she requested a reasonable accommodation and filed an internal complaint about an aggressive co-worker, in violation of the aforementioned statutory authority.

    II.      JURISDICTION

    2.      This Court has jurisdiction over this action pursuant to 42 U.S.C. Section 2000e-5(f)(3), 12117, 28 U.S.C. 1331, 1343, 1367 and 29 U.S.C. 791.

    III.      VENUE

3.      Venue is proper as the operative events occurred within this judicial district, and this action is being filed within 90 days of receipt of a Right to Sue Letter from the Equal Employment Opportunity Commission.

PARTIES

4.      Plaintiff KAREN DECHABERT is a person with a documented disability, as outlined in the Americans with Disabilities Act, who requested a reasonable accommodation.  She has been employed by Defendant METROPOLITAN TRANSPORTATION AUTHORITY for over seventeen years.   At all relevant times, her time, attendance and performance were satisfactory.  She has been subjected to ongoing workplace retaliation subsequent to her request for a reasonable accommodation and her complaints regarding a physically, aggressive co-worker.  Plaintiff currently resides at 23 St. Johns Place, Apartment 1R Brooklyn, New York  11217.

5.      Defendant METROPOLITAN TRANSPORTATION AUTHORITY is an entity that conducts business in New York, and is thereby subject to suit.  Its business address is Two Broadway, 16th Floor, New York, New York  10004.  At relevant times, it employed Plaintiff.  After Ms. deChabert complained about a hostile work environment, and requested a reasonable accommodation, she was retaliated against.

6.      Defendant KENNETH NEAL, at all relevant times was employed by Defendant METROPOLITAN TRANSPORTATION AUTHORITY, and is a decision-maker.  His actions must conform to the laws of the State of New York, and the Constitution of the United States, and violation of said laws subjects him to suit.

7.      Defendant NAEEM DIN, at all relevant times was employed by Defendant METROPOLITAN TRANSPORTATION AUTHORITY, and is a decision-

2

maker. His actions must conform to the laws of the State of New York, and the Constitution of the United States, and violation of said laws subjects him to suit.

8. Defendant GWENDOLYN HARLESTON, at all relevant times was employed by Defendant METROPOLITAN TRANSPORTATION AUTHORITY, and is a decision-maker. Her actions must conform to the laws of the State of New York, and the Constitution of the United States, and violation of said laws subjects her to suit.

II. FACTUAL AVERMENTS

9. On April 2, 2002, Plaintiff Karen deChabert was diagnosed with carpel tunnel syndrome by Dr. Levinson. In October 2002, her diagnosis was confirmed by Dr. John Mazella, a Transportation Authority orthopedic surgeon.

10. In November 2002, Ms. deChabert first advised her supervisor, Defendant Gwen Harleston of her condition.

11. Plaintiff advised Defendant Harleston that she required additional time to complete data entry intensive computer work. Ms. Harleston advised Ms. deChabert that her request did not constitute an "acceptable accommodation".

12. On December 6, 2002, Ms. deChabert was aggressively approached by Lorraine Warren, a co-worker from the Business Program staff. Ms. Warren made threatening and profane comments to Plaintiff absent provocation.

13. As Ms. Warren's hostility escalated, on December 30, 2002, Plaintiff advised her supervisor of Ms. Warren's aggression. Defendant Harleston instructed Plaintiff to prepare a written statement.

14.     On January 13, 2003, Ms. deChabert filed a formal complaint. Defendant Harleston was the Unit EEO Compliance Officer, therefore, she conducted the investigation into Ms. deChabert's claims.

15.     After a very limited inquiry, Defendant Harleston determined no hostility had occurred. It is Plaintiff's opinion that the close social relationship between Defendant Harleston and Ms. Warren's supervisor adversely affected the investigation.

16.     Despite the dismissal of the charge, Defendant Harleston instructed Ms. deChabert to avoid contact with Ms. Warren. Ms. Harleston further instructed Plaintiff that she was confined to her cubical. Plaintiff was only permitted to go to the restroom without Ms. Harleston's prior approval, otherwise any travel around the workplace had to first be discussed and approved by Defendant Harleston.

17.     Additionally, Plaintiff was ordered to take Stress Management and Interpersonal Communications classes based upon the incident involving Lorraine Warren. In compliance with her supervisor's directive, Plaintiff took the required courses, and remained in her cubical throughout the work day.

18.     During the course of the investigation, beginning in mid-January 2003 through his departure in June 2003, Shibu Jacob, the systems specialist who inputted the information Ms. deChabert used in her report analysis work was given extensive project work from Defendant Harleston, had taken an extended vacation and was assigned jury duty. In light of the foregoing, the majority of the computer inputting intensive work, became Plaintiff's obligation to complete, in addition to her regular work assignments.

4

19. Despite Plaintiff's appeals for assistance, Defendant Harleston denied her requests. In fact, when co-workers volunteered to assist Ms. deChabert with the heavy work load, they were instructed not to.

20. From January 2003, after Ms. deChabert complained until a replacement Systems Specialist was hired in March 2004, Ms. deChabert performed two job functions, one involving out of title work assignments with extensive data entry, which exacerbated her carpel tunnel syndrome, and caused a stressful work environment.

21. On April 3, 2003, after several months of being confined to her cubical, Plaintiff met with the Division Manager, Defendant Kenneth Neal, and advised him of the hostile work environment fostered by Ms. Harleston's cubical confinement and the excessive workload. Defendant Neal immediately lifted the retaliatory cubical restrictions, however, did nothing to ameliorate the workload excesses.

22. After Ms. deChabert's formal complaint and request for a reasonable accommodation, Ms. Harleston retaliated against her. In addition to the cubical restrictions, the mandatory stress management courses and the failure to replace the systems specialist, Defendant Harleston regularly spoke to Plaintiff in a commanding, hostile tone. Defendants Din and Neal were witnesses to Defendant Harleston's inappropriate speech, and on occasion held meetings to discuss work relations. However, the supervisor's hostile conduct persisted. Din and Neal were aware of the ongoing aggression, however, failed to act.

23. Defendant Harleston micromanaged Plaintiff's work, and investigated her whereabouts throughout the day. Ms. Harleston further failed to give Ms. deChabert a performance evaluation for the period ending March 2003, while all other non-disabled,

non-complaining staff members received their reviews according to schedule. Defendants Din and Neal were aware that Ms. deChabert was not timely evaluated, however failed to act to correct the situation.

24. Defendants Din and Neal were fully aware of extensive scope Defendant Harleston's retaliatory conduct, and failed to act to ameliorate Plaintiff's circumstance.

25. In June 2003, Defendant Harleston instructed Ms. deChabert that she would be responsible for imputing, producing, analyzing and interpreting reports despite her accommodation. Again, Defendants Din and Neal were aware of Plaintiff's request for an accommodation, the loss of manpower resulting in computer inputting intensive work, and the failure to hire a systems specialist, however, failed to act to ameliorate the hostile work conditions.

26. Defendant Harleston was aware that the nature of the out-of-title work directly and adversely affected Plaintiff's carpel tunnel syndrome. Despite said knowledge, she repeatedly denied Plaintiff's requests for additional time to complete computer related work, or to extend deadlines. Thereafter, when reports were prepared late, Defendant Harleston became intentionally punitive asserting missed deadlines, etc., as a basis for reprimands, a corrective action plan and ultimately a sixty-day warning letter.

27. Prior to complaining about workplace aggression, and advising her supervisor of her need for additional time to complete computer input intensive work, Ms. deChabert received overall performance ratings of a "Solid Performer".

28. After complaining about workplace hostility, and requesting an accommodation, Ms. deChabert was given an evaluation covering a twenty month period of "Unsatisfactory", based primarily upon her need for additional time to complete work.

29. During this extended evaluation period, Ms. deChabert performed the job functions of two positions unassisted for the majority of the relevant extended rating period.

30. The Unsatisfactory rating Ms. Harleston gave Plaintiff, which Defendants Din and Neal approved, resulted in the denial of Plaintiff's 2003, 2004 and 2005 Salary Program increase, and loss of additional benefits.

31. Importantly, for the majority of the rating period that Plaintiff received an Unsatisfactory rating, she had performed out of title work that was data entry intensive.

32. Ms. Harleston lowered Ms. deChabert's 2003 rating based almost exclusively on time management issues, issues that would not be present if the systems specialist's position had been filled, or the additional work been redistributed.

33. Defendant Harleston denoted that reports were not prepared on time, utterly failing to acknowledge extenuating circumstances, such as missing, necessary information, etc.

34. On one occasion, Defendant Harleston, herself was in possession of documentation necessary to complete a report that she did not give to Ms. deChabert, then thereafter wrote her up for filing the report late. This type of disciplinary action was intentional, blatant and retaliatory, given the supervisor created the conditions under which Plaintiff could not complete the job assignment.

35. Defendant Harleston accused Plaintiff of making errors in several of the reports she reviewed. Some examples of the alleged 'errors' were incorporated into a notebook, which revealed minor things such as extra blank spaces in the typed text and writing 'Hispanic' in lieu of 'Hispanics' as a topic heading. In essence, most of the alleged deficiencies were stylistic, such as the placement of footnotes, uncentered page numbers in a draft report, etc.

36. In December 2003, Ms. deChabert was placed on a Corrective Action Plan. The plan was to last ninety-days, and Ms. Harleston was to provide detailed instructions on a weekly basis to assist Plaintiff's improvement of alleged deficiencies.

37. During the ninety-days the plan was to be in effect, Defendant Harleston barely commented on Plaintiff's work.

38. Importantly, none of these alleged performance deficiencies predated Ms. deChabert's request for an accommodation, or her complaint of workplace hostility.

39. During this period, Defendants did not acknowledge or otherwise honor Plaintiff's accommodation request.

40. Other MTA Office of Civil Rights employees complained of hostile working conditions. Therefore, from April 2004 through July 2004, the staff was required to attend instruction at a Staff Retreat. The retreat facilitators addressed workplace issues, personality differences, etc. In July 2004, for reasons unknown to Plaintiff, the program was prematurely discontinued.

41. In April 2005, based on continued, unrelenting and unbridled hostility from Defendant Harleston, Plaintiff filed a complaint with the Equal Employment Opportunity Commission, alleging disability discrimination and retaliation.

42. In February 2006, Ms. deChabert was finally removed from the ninety-day corrective action plan that was implemented in December 2003.

43. Importantly, Defendant MTA has no disciplinary guidelines, therefore, the parameters of the Corrective Action Plan imposed against Plaintiff extended well beyond the designated ninety-day period, and lacked specific parameters. The MTA employee procedure manual developed in 1999 states that disciplinary procedures were to be developed, however none have been drafted to date.

44. A twenty-month review period, the never-ending corrective action plan and failure to advise a former "Solid Performer" of a proposed "Unsatisfactory" rating smacks of retaliation and discrimination under these circumstances.

45. Ms. deChabert's production level in 2004 had equaled or exceeded the prior year's level. Since she maintained the previous year's production level with reduced staffing, her performance rating should have reflected this achievement.

46. Notably, with the one exception of receiving Excel training, Plaintiff had achieved all of her 2003 goals at the time she was placed on the Corrective Action Plan.

47. In a December 28, 2004 memorandum, without notification, Ms. Harleston placed Ms. deChabert on a sixty-day final warning. In that memorandum, Ms. deChabert first learned that the term of the Corrective Action Plan had been extended from March 10, 2004 to December 28, 2004.

48. The sixty-day final warning should have expired March 10, 2005 given there were no further complaints of deficiencies by Ms. Harleston.

49. Here again, it was February 2006 that the sixty-day final warning was removed, again over one year beyond the designated sixty-day warning period.

9

50. Prior to Plaintiff requesting an accommodation and complaining about workplace hostility, Defendants gave Plaintiff favorable performance evaluations.

51. Subsequent to her request for a reasonable accommodation and complaining about workplace hostility, Defendants failed to replace the systems specialist, the person who performed the majority of the data entry aspects of Plaintiff's job.

52. Upon information and belief, Defendants did not place individuals that did not have Americans with Disabilities protections or that did not complain about workplace conditions on hyper-extended disciplinary programs.

53. Based on the foregoing, Plaintiff meets the statutory requirements of an employee suffering adverse employment actions based on her disability and request for a reasonable accommodation in violation of Title VII, the Rehabilitation Act of 1973, as amended, and the ADA.

54. The aforementioned acts and omissions caused Plaintiff severe emotional distress, resulting in stress-related conditions, loss of pay, benefits, and compensation.

55. Defendants intentional, illegal and discriminatory acts were undertaken pursuant to their customs, practices and policies, and created hostile working conditions.

56. As a proximate result of Defendants' discriminatory acts toward Plaintiff once she requested an accommodation, Plaintiff was unfairly disciplined for circumstances that were directly related to her disability, resulting in the loss of job opportunities, earnings, bonuses and other employment benefits.

57.     As a further proximate result of Defendants' intentional, illegal and discriminatory conduct, Plaintiff has suffered impairment and damage to her good name and reputation.

58.     As a further and proximate result of Defendants' intentional acts, Plaintiff suffered severe mental anguish, damage to her health and well-being.

59.     The sanctity of protections for individuals with disabilities is severely undermined when the Metropolitan Transportation Authority's Office of Civil Rights engages in retaliatory treatment of individuals who request accommodations and report adverse workplace conditions.  Therefore, Defendants' conduct is outrageous, malicious, intended to injure Plaintiff, and done with reckless indifference to Plaintiff's protected rights, entitling Plaintiff to punitive damages as against the individually-named Defendants.

## AS AND FOR A FIRST CAUSE OF ACTION

60.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 59, as if fully contained herein.

61.     Defendants violated Section 296 of the New York Human Rights Law by discriminating against Plaintiff on the basis of her disability, and retaliating against her based on her complaints about a hostile work environment.

## AS AND FOR A SECOND CAUSE OF ACTION

62.     Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 61, as if fully contained herein.

63. Defendants impermissibly discriminated and retaliated against Plaintiff on the basis of her disability, and her complaints of a hostile work environment in violation of Title VII, 42 U.S.C. 2000 et seq.

### AS AND FOR A THIRD CAUSE OF ACTION

64. Plaintiff hereby repeats and realleges each allegation contained in paragraphs 1 through 63, as if fully contained herein.

65. Defendants discriminated against Plaintiff on the basis of her disability in violation of the Americans with Disabilities Act.

VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court grant judgment in her favor, in the form of the following relief:

- a. An award of damages to be determined at the time of trial to compensate Plaintiff for loss of income, mental anguish, humiliation, embarrassment, emotional injury;
- b. An award of equitable relief;
- c. An award of reasonable attorneys' fees and the costs of this action; and,
- d. Such other and further relief as to this Court may seem just and proper.

Dated: March 27, 2006
New York, New York

Respectfully submitted,
THE LAW OFFICES OF SHERI HATTON
By:_____
Sheri M. Hatton (SH 2990)
Attorneys for Plaintiff Karen deChabert
305 Broadway, Suite 1204
New York, New York  10007
(212) 766-6200
(212) 766-6202 (fax)